## THOMAS, SHERIFF AND COLLECTOR, ET AL. *v.* KANSAS CITY SOUTHERN RAILWAY COMPANY ET AL.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 303.   Argued March 9, 12, 1923.—Decided April 9, 1923.

1. The legislature of a State may, if consistent with its constitution, establish a drainage district, set the boundaries, and apportion the cost by fixing the bases of assessment and taxation; and its conclusion that lands will be benefited cannot be assailed under the Fourteenth Amendment unless palpably arbitrary or discriminatory.   P. 483.

2. A portion of the franchise of a railroad may be included as real estate within such a district; and, to justify its assessment, the benefit need not be direct, and may consist of gains to be derived from increased traffic due to the improvement.   *Id.*

3. But vague speculation as to future increased traffic receipts will not justify a basis of taxation which necessarily produces manifest inequality.   P. 484.

277 Fed. 708, affirmed.

50947°—23——31

APPEAL from a decree of the Circuit Court of Appeals which affirmed a decree of the District Court permanently enjoining the appellant drainage district and state officials from enforcing a special drainage improvement tax, levied upon property of the appellee railroad companies.

*Mr. James D. Head* and *Mr. Otis Wingo*, with whom *Mr. Henry Moore, Jr.,* was on the brief, for appellants.

*Mr. S. W. Moore* and *Mr. James B. McDonough,* with whom *Mr. F. H. Moore* and *Mr. A. F. Smith* were on the briefs, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Legislature of Arkansas created, by a special law, the Little River Drainage and Levee District of Sevier County, No. 1, a body corporate, and defined its boundaries. Act 186 of Acts of 1915, p. 747, amended by Act 79 of Acts of 1917, p. 348. This suit was brought in the federal court for the Western District of Arkansas, Texarkana Division, by two railroad companies to restrain enforcement of a tax levied in the year 1918 under that act. The defendants below were the district, its officers, and the sheriff and collector of Sevier County. The statute named a board of directors; imposed upon it the duty of constructing drainage works; empowered it to raise the necessary money by construction notes and an issue of bonds to the amount of $100,000; and directed it: " to assess and levy annually a tax upon the valuation as it shall appear each year on the assessment book of Sevier County, Arkansas, upon all lands and . . . upon the railroad tracks of companies in said district, as appraised by the Board of Railroad Commissioners . . . ; not to exceed, however, in any one year, the sum of six per cent, of the assessed valuation of the said property within the district."

The estimated cost of the improvement was about $75,000. For the purpose of defraying a part of this cost the directors levied, in the year 1918, a tax of $7,346.12, being 6 per cent. of the assessed value of all real estate within the district. Of this amount it levied upon the railroads $4,194.60, being 6 per cent. of the assessed value of their property. Upon the 12,000 acres of land, being all the other real estate in the district, the directors laid, in the aggregate, taxes of $3,151.52, being 6 per cent. of its assessed value. Thus, 57 per cent. of the burden was imposed upon the railroads and 43 per cent. upon the owners of all the other real estate. Plaintiffs claimed that the tax was void. After a hearing, at which much evidence was introduced, the District Court entered a decree for a permanent injunction. Its decree was affirmed by the Circuit Court of Appeals, on the ground that the facts reveal an instance of discrimination so palpable and arbitrary as to amount to a denial of equal protection of the laws. 277 Fed. 708. The case is here on appeal.

The applicable rules of law are settled. The legislature of a State may, if consistent with its constitution, establish a drainage district; may set the boundaries; and may apportion the burden by fixing the basis of assessment and of taxation. The legislature's determination that lands will be benefited by a public improvement for which it authorizes a special tax, is ordinarily conclusive. Its action in so doing cannot be assailed under the Fourteenth Amendment, unless it is palpably arbitrary or discriminatory. *Houck* v. *Little River Drainage District,* 239 U. S. 254, 262; *Valley Farms Co.* v. *County of Westchester, ante,* 155. A proportion of the franchise of a railroad may, consistently with the Federal Constitution, be included as real estate within the district. To justify an assessment upon property the benefit from the improvement need not be a direct one. It may, in case of a railroad, consist of gains derived from increased traffic.

*Branson* v. *Bush,* 251 U. S. 182. But vague speculation as to future increased traffic receipts will not justify a basis of taxation which necessarily produces manifest inequality. Compare *Kansas City Southern Ry. Co.* v. *Road Improvement District No. 6,* 256 U. S. 658, 661. In the case at bar the lower courts concurred in their findings of controverted facts. We accept these findings. *Dun* v. *Lumbermen's Credit Association,* 209 U. S. 20. The question for decision is whether facts, admitted and found, establish that the tax levied upon plaintiffs violates rights guaranteed by the Fourteenth Amendment.

The district is wholly rural. Little River bounds it on the west and south. It contains about 12,000 acres of rich land. Only one-tenth is under cultivation. The rest is wild and untillable, because marshy or subject to overflow. The aggregate assessed value of the 12,000 acres was in 1918 only $52,525.33. The lands were then worth from $8 to $40 an acre. The proposed improvement would increase their value at least $250,000.00. Along the northerly part of its western boundary the district is traversed for a distance of about two miles, by a single-track railroad. The total length of track within the district, including a detour line and sidings, is 3.61 miles. The railroad is owned by the Texarkana and Fort Smith, and is operated by the Kansas City Southern, as part of its line from Missouri to the Gulf. The railroad property is 40.43 acres in area; and is assessed at $69,910.00. It would derive no direct benefit from the construction of the ditches and embankment designed to drain and to protect the district from overflow; because the tracks are laid upon a fill or dump (with the exception of one trestle) and are above flood level. The railroad would derive some measure of indirect benefit; because the drained land would doubtless be cultivated, and more extensive cultivation would probably increase traffic over the line.

The tax laid imposes upon the railroad, which can receive no direct or immediate benefit, a very heavy burden; and the lands which will receive a large direct (and possibly immediate) benefit, are required to bear only a very small part of the burden.   The market value of the 12,000 acres may increase largely before any additional land is cultivated, or even before the improvement is made.   The railroad can derive the indirect benefit, through increased traffic, only after the drainage of the wild lands has been effected and the reclaimed lands are being cultivated. The work of reclamation had not even begun.   Obviously there could not be any increase in traffic receipts during the year 1918, in which the tax is laid.   Appellants argue that the assessed valuation of the lands would probably be greatly raised in later years; that the assessment upon the railroad property would probably not be raised; that the proportion of the annual burden imposed upon the railroad would diminish from year to year; and that, in course of time, the aggregate of the taxes levied upon each piece of property would be thus adjusted so as to correspond to the benefits received.   This argument is relied upon to save the scheme of apportionment.   But it rests wholly upon prophecy.   The fact is that the tax levied is grossly discriminatory.   The best that can be said of the scheme of taxation (so far as it concerns the railroad) is that the burdens imposed will grow less, as its ability to bear them grows greater.

*Affirmed.*