## OREGON SHORT LINE R. CO. v. CLARK COUNTY HIGHWAY DIST. et al.

District Court, D. Idaho, E. D. October 22, 1927.

**I. Constitutional law ⟨key⟩290(1)—Highways⟨key⟩ 122—Basis of taxation for local improvements is not unconstitutional, unless palpably arbitrary, but benefits must be proportionate to tax (Const. Amend. 14).**

State Legislature may create tax districts to meet expense of local improvements, and may fix the basis of taxation, without violating Const. Amend. 14, unless its action is palpably arbitrary, and ordinarily the levy may be made on land especially benefited, according to value, position, area, or the front foot rule.

**2. Constitutional law ⟨key⟩290(6)—Highways ⟨key⟩ 90—Special statute, validating highway district and approving bond issue, held not to deprive railroad of property without due process (Loc. and Sp. Laws Idaho 1927, c. 4, § 1; Const. U. S. Amend. 14).**

Loc. and Sp. Laws Idaho 1927, c. 4, known as Clark County Highway District Act, by section 1, validating organization of highway district and approving bond issue, payable by ad valorem taxation voted for by district organized under invalid statutes, held not so palpably arbitrary or discriminatory, as respects railroad, which owned about one-half of taxable property in the district, as to deprive it of its property without due process of law, in violation of Const. U. S. Amend. 14.

**3. Constitutional law ⟨key⟩193—Legislature may validate what it could have authorized, if power to authorize continues.**

A Legislature may validate what initially it could have authorized, if such power to authorize continues at the time of ratification.

**4. Statutes ⟨key⟩80(1)—Special statute validating highway district held not invalid as special law creating "corporation" (Loc. and Sp. Laws Idaho 1927, c. 4, § 1; Const. Idaho, art. 3, § 19).**

Loc. and Sp. Laws Idaho 1927, c. 4, known as Clark County Highway District Act, by section 1 validating organization of highway district and approving bond issue, payable by ad valorem taxation voted for by district organized under invalid statutes, held not violative of Const. Idaho, art. 3, § 19, prohibiting local or special laws creating any corporation; word "corporation," as used therein, being limited to private corporations, and not including public or quasi municipal corporations, in view of article 11, § 2, and article 12, §. 1.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Corporation.]

**5. Statutes ⬤⟐82—Special statute, validating highway district and approving bond issue, held not invalid as special law giving effect to invalid instruments, or creating, extending, or impairing liens (Clark County Highway District Act; Const. Idaho, art. 3, § 19).**

Loc. and Sp. Laws Idaho 1927, c. 4, known as Clark County Highway District Act, by section 1 validating organization of highway district and approving bond issue, payable by ad valorem taxation voted for by district organized under invalid statutes, *held* not violative of Const. Idaho, art. 3, § 19, prohibiting special laws giving effect to invalid deeds, leases, and other instruments, and the creation, extension, or impairing of liens.

**6. Highways ⬤⟐95(2)—Special statute, validating highway district and approving bond issue previously approved by two-thirds of voters, held valid (Clark County Highway District Act; Const. Idaho, art. 8, § 3).**

Loc. and Sp. Laws Idaho 1927, c. 4, known as Clark County Highway District Act, by section 1 validating organization of highway district and approving bond issue, voted for by more than required two-thirds of the electors and otherwise complying with Idaho Constitution, *held* not violative of Const. Idaho, art. 8, § 3, prohibiting incurring indebtedness exceeding in that year the revenue provided for it for such year without assent of two-thirds of the qualified electors.

**7. Constitutional law ⬤⟐193—Special statute, validating highway district and approving bond issue, held not invalid as retroactive law for benefit of railroad, or as imposing new liability in respect to past transactions (Clark County Highway District Act; Const. Idaho, art. 11, § 12).**

Loc. and Sp. Laws Idaho 1927, c. 4, known as Clark County Highway District Act, by section 1 validating organization of highway district and approving bond issue, payable by ad valorem taxation voted for by district organized under invalid statutes, *held* not violative of Const. Idaho, art. 11, § 12, prohibiting retroactive legislation for benefit of a railroad or other corporation or individual, or which imposes on people of any county or municipal subdivision a new liability in respect to transactions or considerations already past.

In Equity. Suit by the Oregon Short Line Railroad Company against the Clark County Highway District and the Commissioners of said district. Decree of dismissal with prejudice.

George H. Smith, of Salt Lake City, Utah, and H. B. Thompson and J. H. McEvers, both of Pocatello, Idaho, for complainant.

R. W. Katerndahl, of Dubois, Idaho, and Burcham & Blair, of Spokane, Wash., for defendants.

Frank L. Stephan, Atty. Gen., and H. O. McDougall, Asst. Atty. Gen., of Idaho.

Before DIETRICH, Circuit Judge, and WEBSTER and CAVANAH, District Judges.

DIETRICH, Circuit Judge. For a statement of most of the salient facts and certain features of law, reference is made to our decision of January 3, 1927. 17 F.(2d) 125. It now appears that at the date of that decision there were in Idaho 118 highway districts other than defendant, which like it had been organized pursuant to the provisions of the general Highway District Act, which we held to be invalid; and, possibly because of the decision, the state Legislature, then convening, passed certain curative measures, consisting of an omnibus act and 119 special acts, each purporting to validate the proceedings respecting a single district. The omnibus measure was approved February 4, 1927, and the special act relating to the defendant district February 23, 1927. Thereafter the defendant filed its answer, in which, among other things, it set up as a defense these enactments, and the cause is now submitted upon the pleadings, together with a stipulation of facts, the only substantial question for consideration being the validity and efficacy of the curative legislation.

The first section of the omnibus act is as follows:

"Section 1. That whenever the board of county commissioners of any county shall have caused to be described by order made and entered upon its records any defined portion of contiguous territory, located wholly within such county, for the construction, improvement or repair of highways located therein, pursuant to the provisions of the Highway District Law of Idaho, each such defined portion of contiguous territory is hereby recognized as a legal taxing district and body politic of this state and as a highway district for such road purposes, and the creation of each such highway district is hereby validated and legalized." Laws 1927, c. 5.

Read naturally, the language seems to import an attempt to validate all proceedings, future as well as past, which have been or shall be taken "pursuant to the Highway District Law of Idaho." In that view of its scope, it would seem to add nothing to the original act, for it simply makes express a declaration which the original act necessarily implies. If, upon the other hand, with some strain, we restrict its application to past transactions, the objections which plaintiff urges against the so-called special acts would seem to be equally available against it. It

lays down no rule of law or principle as a test of validity or invalidity, but simply declares that every district which in its organization ·has complied with the requirements of the invalid law is valid. There is no intimation of a consideration of local conditions requisite to validity, and upon the other hand there is some affirmative evidence that such considerations were wholly ignored, for the act embraces within its terms such districts as Kimama and Yale, in respect of which the facts have been judicially determined to be such as to preclude valid organization, even by direct action of the Legislature. Oregon Short Line R. R. Co. v. Kimama Highway Dist. (D. C.) 287 F. 734; Id. (C. C. A.) 298 F. 846; Oregon Short Line R. R. Co. v. Yale Highway Dist. (C. C. A.) 8 F.(2d) 676. The mere fact that the act employs comprehensive general terms, instead of designating by name each of the 119 districts, is thought to be immaterial. If, instead of passing 119 identical separate acts, the Legislature had passed a similar single act specifically naming each of the 119 districts, we would have substantially the same result, accomplished in substantially the same manner. We shall therefore restrict our discussion to the Clark County District Act, for in terms it is more specific and comprehensive than the omnibus act, and is susceptible to no objection which cannot with equal force be urged against that measure.

In section 1 of the Clark County Highway District Act (chapter 4, Local and Special Laws of Idaho 1927), after express reference to the local proceedings defining the boundaries of the district, and purporting to organize it, it declares that such district "is hereby created and established as a highway district in said [Clark] county, and the creation and organization and legal existence thereof as such highway district and as a legal taxing district and body politic and body corporate of this state for highway purposes, under and pursuant to and coextensive with the provisions of the Highway District Law of the state of Idaho (as amended and supplemented by subsequent legislation) are hereby declared, recognized, approved, validated, and legalized, * * * with full legislative powers" respecting highways, with "such other powers and duties as are prescribed by said Highway District Law, as amended and supplemented."

There follow detailed provisions approving and validating all the proceedings taken in the organization of the district, and in the matter of the proposed $100,000 bond issue, including elections and the levy of taxes.

Taxes are to be levied annually, sufficient to cover accrued interest and installments of principal of the bonds, "upon the value of the taxable property in said highway district as fixed for state and county taxes." Further analysis is unnecessary, for, admittedly, the act is in form sufficiently comprehensive and explicit to effect its stated purpose.

[1] We first inquire whether it contravenes any provision, particularly the Fourteenth Amendment, of the Constitution of the United States. "The settled general rule is that a state Legislature 'may create taxing districts to meet the expense of local improvements and may fix the basis of taxation without encountering the Fourteenth Amendment unless its action is palpably arbitrary or a plain abuse.' Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55 [36 S. Ct. 254, 60 L. Ed. 523]; Houck v. Little River Drainage District, 239 U. S. 254, 262 [36 S. Ct. 58, 60 L. Ed. 266]. Ordinarily, the levy may be upon lands specially benefited according to value, position, area, or the front-foot rule. French v. Barber Asphalt Co., 181 U. S. 324, 342 [21 S. Ct. 625, 45 L. Ed. 879]; Cass Farm Co. v. Detroit, 181 U. S. 396, 397 [21 S. Ct. 644, 45 L. Ed. 914]; Louisville & Nashville R. R. Co. v. Barber Asphalt Co., 197 U. S. 430 [25 S. Ct. 466, 49 L. Ed. 819]; Withnell v. Ruecking Construction Co., 249 U. S. 63 [39 S. Ct. 200, 63 L. Ed. 479]; Hancock v. City of Muskogee, 250 U. S. 454 [39 S. Ct. 528, 63 L. Ed. 1081]; Branson v. Bush, 251 U. S. 182 [40 S. Ct. 113, 64 L. Ed. 215]. If, however, the statute providing for the tax is 'of such a character that there is no reasonable presumption that substantial justice generally will be done, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred the law cannot stand against the complaint of one so taxed in fact.' Gast Realty Co. v. Schneider Granite Co., supra." Kansas City So. Ry. v. Road Imp. Dist. No. 6, 256 U. S. 660, 41 S. Ct. 605, 65 L. Ed. 1151. See, also, Thomas v. Kansas City So. R. Co., 261 U. S. 481, 43 S. Ct. 440, 67 L. Ed. 758.

[2] It appears from the stipulation of facts that the district is substantially conterminous with Clark county, and is approximately 40 miles from north to south and 86 miles from east to west. Plaintiff's line of road runs through it from north to south a distance of 37.5 miles; the right of way, aside from station grounds, being 200 feet in width. In the district there are five stations for the receipt and discharge of passengers and

freight. The population of the district is approximately 2,500, and its principal industries are farming and stock-raising, with some mining. The assessed value of all property in the district in 1925 was $4,269,400, of which $2,064,400 was for plaintiff's railroad. The roads upon which the expenditure is to be made are all of general travel and use by the residents of the district, and are to some extent utilized for the purpose of carrying products and commodities to and from complainant's railroad. Two, but only two, of the seven principal highways run parallel to plaintiff's line of railroad. These two constitute a part of the Idaho-Montana Highway, the greater portion of which has been gravel-surfaced, and is being maintained by the state and federal governments. These two roads aggregate only 9 miles in length, and in a measure are of value in enabling the residents to get to the county seat, which is on the railroad, and to shipping points on the railroad. The other roads run in divers directions, and are used in part for local travel and in part for interstate travel, and serve as a means of reaching railroad points.

Under the circumstances, we cannot say that the action of the Legislature, either in validating the organization of the district or in approving the bond issue, with the burden thereof to be borne by all property in proportion to fair value, is palpably arbitrary or discriminatory. True, it would be difficult to trace direct benefit to the plaintiff, or to measure the indirect value; but that may be said as well of most, if not all, other property in the district. And yet highways reasonably well constructed and maintained are commonly regarded as substantially beneficial, if not indispensable, to industrial development. In essential features, the project and the mode of procedure prescribed are not exceptional. The territorial unit approximates that of a normal county, and it is a common function of county government to lay out and maintain highways, and with funds partly, at least, arising from an ad valorem tax. It is fair to assume that in the projected work the district will have the co-operation of state and national governments, and, as is the practice, will be aided by funds from those sources. The case, therefore, would not be essentially different, had the power granted the district been conferred upon Clark county.

As to the benefit to plaintiff, it is not merely a question of the increase of its local business, but of maintaining what it has. Highways may be quite as important in holding population and industrial enterprises as in getting them; and if highways are to be built and maintained, how is the burden to be borne, if not in the manner prescribed? Thomas v. Kansas City So. R., 261 U. S. 481, 43 S. Ct. 440, 67 L. Ed. 758, much relied upon by plaintiff, is clearly distinguishable in point of fact, as are the Kimama and Yale Highway District Cases, supra, and Road Improvement District No. 1 v. Mo. Pac. R. Co. (decision Supreme Court of United States, No. 38, April 18, 1927) 274 U. S. 188, 47 S. Ct. 563, 71 L. Ed. 992.

[3] The other general question is: Did the Legislature have the power, under the Constitution of Idaho, to confirm the proceedings respecting the organization of the district and the issuance of bonds? It is undoubtedly the general rule that a Legislature may validate what initially it could have authorized, if such power to authorize continues at the time of ratification. Charlotte Harbor & No. Ry. Co. v. Welles, 260 U. S. 8, 43 S. Ct. 3, 67 L. Ed. 100. The underlying question, therefore, is whether the Idaho Legislature had and has the power to do directly what it has here undertaken to do indirectly, or, more specifically, whether there is any prohibition in the Constitution against the exercise of such power, for admittedly, unless so prohibited, it "is master of its own discretion" in passing such laws. Butler v. Lewiston, 11 Idaho, 393, 83 P. 234.

[4] The constitutional prohibitions upon which plaintiff relies are found in section 19 of article 3; the title of the article being "Legislative Department." By the section, the Legislature is prohibited from passing "local or special laws" in the following, as well as other cases: (1) Authorizing the laying out, maintaining, altering, or vacating of roads and other highways. (2) For the assessment and collection of taxes. (3) Giving effect to invalid deeds, leases, or other instruments. (4) Legalizing as against the state the unauthorized or invalid act of any officer. (5) Authorizing the creation, extension, or impairing of liens. (6) Creating any corporation.

In the view we take, the most serious of these clauses is the last. A highway district may not improperly be classed as a corporation, and indeed it is referred to in the act itself as a "body corporate." But is it a corporation within the intent of the prohibiting clause? Undoubtedly the word "corporation" is not uncommonly used in a narrow sense, as designating only private corporations. Indeed, in the identical section we find a prohibition against releasing the indebtedness or obligation of "any person or.

*corporation* in this state, or any *municipal corporation* therein." We have here a plainly implied recognition of the view that the term "corporation" is not always to be understood as embracing municipal corporations. And upon turning to article 11, which is entitled "Corporations, Public and Private," we find, under the subtitle, "Special Charters Prohibited" (section .2), the following declaration: "No charter of incorporation shall be granted, extended, changed, or amended by special law, except for such municipal, charitable, educational, penal or reformatory corporations as are, or may be, under the control of the state; but the Legislature shall provide by general law for the organization of corporations hereafter to be created." And the exception there made of "municipal corporations," etc., is to be read in the light of the following provision from article 12, entitled "Corporations, Municipal," section 1 (subtitle, "General Laws for Cities and Towns") : "The Legislature shall provide by general laws for the incorporation, organization and classification of the cities and towns, in proportion to the population, which laws may be altered, amended, or repealed by the general laws."

Clearly, if "corporation," as used in section 19 of article 3, is all-inclusive, as plaintiff contends, it renders nugatory the excepting clause of section 2, article 11, and the provision of section 1, article 12, becomes surplusage. Having in mind the fact that the term is often limited to private corporations, upon a consideration of the several provisions of the Constitution we are constrained to the view that, as used in section 19 of article 3, it was not intended to embrace organizations of a public and quasi municipal character, such as a highway district. After all, while having corporate form, a highway district is merely a governmental agency, and exercises public functions only. Carpenter v. People, 8 Colo. 116, 5 P. 828; Reclamation Dist. v. Sherman, 11 Cal. App. 399, 105 P. 277; Allen v. Board of Education, 81 N. J. Law, 135, 79 A. 101; St. Louis I. M. & S. R. Co. v. Board of Directors of Levee District, 103 Ark. 127, 145 S. W. 892.

[5] If, then, the Legislature had and has the power to create such a district by special act, the other objections urged have but little, if any, force. No bonds having in fact been issued, we are unable to see how, in any possible view of their meaning, the clauses prohibiting special laws "giving effect to invalid deeds, leases, or other instruments," and "authorizing the creation, extension, or impairing of liens," are pertinent. If it be contended that a petition or other writing constituting a part of the organization proceedings should be regarded as an "instrument," it is sufficient to say that the efficacy of the curative act is in no wise dependent upon the validity of such a writing. The power of the Legislature initially to create being plenary, it may be exercised in harmony with or in disregard of such proceedings. And if, as we hold, the Legislature may effectively ratify the unauthorized creation and organization of the district, of necessity the power includes the validation of "unauthorized and invalid acts" of the county commissioners and other officers involved therein. Like considerations apply to the laying out of roads and the assessment and collection of taxes. Such powers are but incidents of, and are implicit in, the general power to create the district. With equal force it could be argued that the Legislature could not by special act create a county and give it life, because such county may and must exercise the power to assess and collect taxes and establish and maintain roads.

[6] Plaintiff also invokes, as against the proposed bond issue, section 3 of article 8 of the Constitution, which provides that "no county * * * or other subdivision of the state shall incur any indebtedness, * * * exceeding in that year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose," etc. For present purposes we assume, without discussion, that the limitation is fully applicable. But as yet neither by imposition of the Legislature nor by its voluntary act has the district been burdened with or "incurred" any indebtedness. The purported bonds may or may not be issued, but until sold and delivered they constitute no indebtedness, direct or indirect, absolute or contingent. Moreover, .except for such infirmity, if any, as may be due to the invalidity of the general Highway District Act, all the terms of the limitation have been fully complied with, for at an election held for that purpose the proposed bond issue had the assent of more than two-thirds of the electors of the district, and admittedly all constitutional requirements were observed.

The only question, therefore, is whether such proceedings, and particularly the election, should now be held nugatory because of the then-existing infirmity of the law. But, even if we assume the Legislature was and is without the power, upon the direct creation

of a district, to charge it with a financial burden without the assent of the electors, such assent to the incurring of the indebtedness was here given at a fair election held under the form of law. In other words, the requisite assent was freely given in a constitutional manner, and to hold it incompetent, because of infirmities of the general act pertaining to features having nothing to do with election proceedings, would, we think, be to sacrifice substance to form. That the assent, so expressed, meets the constitutional requirement, is thought to be clearly held in Anderson v. Santa Anna, 116 U. S. 356, 6 S. Ct. 413, 29 L. Ed. 633, and Grenada Co. v. Brogden, 112 U. S. 271, 5 S. Ct. 125, 28 L. Ed. 704. See, also, Schneck v. City of Jeffersonville, 152 Ind. 204, 52 N. E. 212.

[7] It is further contended that the act contravenes section 12 of article 11, which provides that: "The Legislature shall pass no law for the benefit of a railroad, or other corporation, or any individual or association of individuals, retroactive in its operation, or which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already passed." But we fail to perceive the applicability of the section. No vested rights are involved, and the legislation impairs none. It is not for the benefit of any railroad or other private interests, but was enacted in furtherance of a general policy, and for the benefit of the public. It imposes no liability in respect to past transactions or considerations. In no reasonable sense have there been any substantive "transactions." The preliminary proceedings had look forward to transactions involving considerations and liabilities, but both considerations and liabilities are as yet but future possibilities.

We deem it unnecessary to analyze the numerous cases cited, most of which are but remotely, if at all, in point. The following may be noted as lending some support to the view we take: Crocheron v. Shea, 6 Idaho, 593, 57 P. 707; Rogers v. Hawley, 19 Idaho, 751, 115 P. 687; New Orleans v. Clark, 95 U. S. 644, 24 L. Ed. 521; Hodges v. Snyder, 261 U. S. 600, 43 S. Ct. 435, 67 L. Ed. 819; Id., 45 S. D. 149, 186 N. W. 867, 25 A. L. R. 1128; Gibson v. Chicago G. W. Ry. Co., 225 Mo. 473, 125 S. W. 453; School Dist. No. 1 v. School Dist. No. 7, 33 Colo. 43, 78 P. 690. See, also, Official Journal Idaho Constitutional Convention, pp. 1063, 1969.

Decree of dismissal, with prejudice, but with costs to plaintiff, and without liability on injunction bonds, for the reason that, when suit was commenced and bonds given, plaintiff was in the right.

I am authorized to say my associates concur.