## Goodman v. Board of Drainage Commissioners of McCracken County, Mayfield Creek Drainage District No. 1 et al.

(Decided April 30, 1929.)

BEN S. ADAMS for appellant.

A. E. BOYD for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

Appellant brought this action in the Carlisle circuit court on February 10, 1928, against the board of drainage commissioners of McCracken county and R. W. Rowland, the sheriff of Carlisle county, Ky. The circuit court sustained a general demurrer to his petition and dismissed it. He appeals.

The facts stated in the petition are these: The board of drainage commissioners of McCracken county, of Mayfield creek drainage district No. 1, is a corporation duly created by law, with authority to sue and be sued, and to contract and be contracted with. On or about June 4, 1918, by a proceeding in the McCracken county court in behalf of certain petitioners, a judgment was entered in that court, and also in the McCracken circuit

court establishing the Mayfield creek drainage district No. 1, fixing its boundaries, the assessments, the damages, and the benefits to the landowners in the boundary. By the judgment a ditch was established beginning in Graves county and extending through the counties of McCracken and Ballard into Carlisle county. The object and purpose of the proceeding and judgment was to reclaim the land within the boundary of the ditch, and to dredge out and cut a canal sufficient in size to carry the waters that accumulated by rainfall off of the land so that the same would become fit for agricultural purposes. During the year 1924 the ditch was finally cut in accordance with the judgment and all of the laterals of the ditch which emptied into it were cut and completed for the purpose of reclaiming the land in the boundary. The cutting and digging of the ditch was begun near Boaz Station, in Graves county, and completed during the latter part of the year 1924 in Carlisle county. By the provisions of the judgment establishing the ditch certain laterals were established for draining low lands which emptied into the main ditch. One of the laterals established by the judgment was a ditch to be cut up a creek known as West Fork, in Carlisle county, which emptied into Mayfield creek near where the mouth of the canal in Mayfield creek stopped. By the provisions of the judgment the West Fork Creek Canal was cut and dredged out for the purpose of carrying the waters of West Fork creek off of the lands bordering thereon into the main channel of Mayfield creek. The judgment established the lateral and directed that it be cut up through West Fork creek and through the lands of the plaintiff, containing about 31 acres, which were in cultivation, and the plaintiff produced thereon corn, peas, and other agricultural products every year prior to the cutting of the ditch.

Up to the completion of the ditch the tract of land was rich and fertile and produced good crops of grain, grass, and other agricultural products yearly thereon, which prior to the digging of the ditch were not destroyed by the waters of Mayfield and West Fork creeks. His tract of land lies on West Fork ditch, is in a short distance of the Mayfield Creek ditch, and is located near the mouth of both said ditches, which will bring all the water on both of the creeks for a distance of many miles in the drainage district. Ever since the year 1924 all of the rainwater emptying into the ditches in the above counties

comes with great force down into the ditches and over-flows plaintiff's land, which is within a very short dis-tance of the end of both of the ditches, which were so negligently cut and established that they fail to carry the water off of plaintiff's land or drain same, and by the stopping of the ditches near his tract of land the water which comes down the ditches from above is prevented from escaping or running down Mayfield creek into the river. .The Mayfield creek and West Fork creek ditches are not cut deep enough or large enough nor carried far enough down Mayfield creek toward the river to drain the water off the plaintiff's land, and the negligence of the board of drainage commissioners in stopping the canals right near the plaintiff's land causes the waters which come down from above to overflow and back up over plaintiff's. land and to stand thereon several feet deep in great volume ever since the ditch was completed in the year 1924, and so destroy the plaintiff's crops, the water from the ditches thereby remaining upon his land for many days and weeks at a time, and so destroying the use of the same for agricultural purposes, and will continue to so destroy it in the future as long as the ditches remain as they are. Instead of the ditches making his land more profitable for agricultural pur-poses, it has completely destroyed his tract of land for that purpose and he is unable to use his land for any ag-ricultural purpose. The establishment of the ditches has not benefited his land in any way, but, on the contrary, has rendered it of no value to him whatever.

At the time the judgment was rendered the land owned by him was owned by Mrs. Hattie Gilmore and is tract No. 515 as set out in the proceedings establishing the ditch and is assessed as 40.4 acres of land. He became the owner of the land on November 30, 1923, when Mrs. Gilmore conveyed it to him and she has no interest in the land. By the provisions of the judgment establishing the ditches or canals, this tract of land was assessed for the drainage tax for special benefits which it would receive by reason of the cutting and establishing of the ditches, and the board of commissioners have wrongfully assessed against the land for special benefits received by reason of the cutting and establishing of the ditches the sum of $91.02 for a period of 25 years. The tax to be collected from the plaintiff for the year 1927 is $91.02. The de-fendants are at this time attempting to collect the tax against him and his property when neither the tract of

land nor the plaintiff nor Mrs. Gilmore received any benefits by reason of the construction and establishment of the ditches, nor will the land be benefited in any way thereby. The judgment establishing the ditch and assessment against the property is in full force and effect and is for a period of 25 years, beginning with the year 1923. Neither Mrs. Gilmore nor the plaintiff consented to the judgment, nor the establishment and construction of the ditches, and it is null and void for the reasons above stated. R. W. Rowland is the sheriff of Carlisle county and as such has in his hands a tax bill for $91.02 for collection and at the direction of the board of drainage commissioners is about to advertise and sell the land for the payment of the tax. The assessment of taxes as set out in the judgment is of greater value than the tract of land at this time. By reason of these facts the plaintiff is entitled to have the judgment, so far as it assesses his land for taxes, set aside and held for naught, and to have the sheriff enjoined from enforcing the taxes, for all of which he prayed judgment.

The statement in the pleading that the judgment of the McCracken circuit court is null and void for the reasons given in the petition is but a conclusion of law. A demurrer to a petition admits the facts to be true, but it does not admit the conclusions of the pleader as a matter of law. No facts are stated in the petition showing that the judgment of the McCracken circuit court is invalid in any way. The McCracken circuit court is a court of general jurisdiction; its judgments are presumed to be within its jurisdiction until the contrary appears. If the judgment is void it is a nullity and may be disregarded everywhere; but he who assails a judgment as void must state facts showing it to be void. This the pleading before us, does not do. It does not appear that the McCracken circuit court had not jurisdiction of the subject-matter of the proceeding or of the parties to it. If it had jurisdiction its judgment is not void. It is not alleged in the petition that Mrs. Gilmore was not a party to the action and from the allegations of the petition it may be assumed that she was a party to the action; the plaintiff, having bought from her pending the action, simply stands under the allegations of the petition in her shoes and he can no more complain of the judgment than she could.

In Dillingham v. Board of Drainage Commissioners of McCracken County, 214 Ky. 263, 283 S. W. 95, the court had before it the sufficiency of a petition very similar to

the one in this case. In that case Dillingham claimed that the ditches had been negligently cut and as a result great injury had been done to his property, for which he claimed damages in the sum of $3,000 against the board of drainage commissioners. It was held that the board of drainage commissioners was simply an arm of the state government and that they were not liable in an action of this sort.

Appellant insists that his property is being taken away from him without due process of law and that, instead of a benefit, he has received a great injury from the digging of the ditches; but no provision of the state or Federal Constitutions has been violated here. A man is entitled to his day in court. His property may not be taken from him without giving him a day in court. The proceeding in question was had under the act approved March 26, 1918, which is now Kentucky Statutes 1922, sec. 2380b, subsecs. 1-61. By the act, when a petition is filed, viewers are appointed, whose duty it is to view the property and report to the court whether the ditch will be a public benefit and whether it will benefit the landowners. They must report to the court all the property owners whose lands are to be affected and on the coming in of their report all the property owners are brought before the court and the court on all the evidence heard determines whether the drainage district shall be established. If the court decides that the drainage district shall be established, then the matter is referred to the board of drainage commissioners, and appraisers are appointed to act and determine what the project will cost, what lands will be benefited, what lands will be damaged or taken, and to what extent the cost shall be charged to each tract of land by reason of benefits received. Upon the coming in of the appraisers' reports the case is heard by the court and such orders are entered as the justice of the case requires. Any party aggrieved can appeal from the county court to the circuit court and from the circuit court to this court. Where the judgment is entered in such a proceeding with all the parties before the court, the judgment of the court, where no appeal is taken, stands like any other judgment. The parties to the action have had their day in court and they cannot subsequently bring another action in another court to get relief from the taxes imposed by the final judgment in the drainage proceeding. If any error has been committed, their remedy is by appeal; or, if newly discovered evi-

dence or other grounds for a new trial exists, they can go into court which rendered the judgment, under sections 518-524 of the Civil Code, and obtain relief, but they may not obtain relief from that judgment by an independent action in the circuit court of another county.

This is not a case where the plaintiff's property has been taken without due process of law or without a day in court. While equity will not suffer a wrong to be without a remedy, this only applies to those who have not had their day in court. In Thomas v. Kansas, etc., R. Co., 261 U. S. 481, 43 S. Ct. 440, 67 L. Ed. 758, the tax was levied by legislative act without any judicial proceeding. The party there charged had not had his day in court.

In Huey v. Board of Drainage Commissioners, 228 Ky. 633, 15 S. W. (2d) 451, the Mayfield drainage district had been established, including Hurricane creek, as a lateral, and it was provided that the waters of that portion of the Hurricane creek section of the district should be drained, connecting with the main drainage ditch by dredging or by cutting a ditch for that purpose. Huey's property was on Hurricane creek. The drainage commission had completed its contract. It had failed to drain Hurricane creek or to do any work thereon and had finally abandoned that part of the drainage project. On these facts, which were alleged in the petition, the court held that Huey was entitled to relief. But that is not this case.

Judgment affirmed.