### PADUCAH–ILLINOIS R. CO. v. GRAHAM, Sheriff, et al.

District Court, W. D. Kentucky, at Paducah.
Jan. 8, 1931.

Wheeler & Hughes, of Paducah, Ky., and Fitzgerald Hall, of Nashville, Tenn., for plaintiff.

Bradshaw, MacDonald & McMurry, J. D. Mocquot, and H. G. Bryan, all of Paducah, Ky., for defendants.

DAWSON, District Judge.

This action as originally instituted was against Emmett L. Holt, sheriff of McCracken county, and Saunders Brooks, John R. Thompson, Robert A. Hines, Otis Throgmorten, John T. Warner, and Clarence H. Gentry (county superintendent of schools), composing the board of education of McCracken county, Ky. During its pendency the term of office of Emmett L. Holt, as sheriff, expired, and the defendant Claude M. Graham is his duly elected, qualified, and acting successor. Likewise, Otis Throgmorten ceased to be a member of the county board of education, and Charles Carneal was elected and qualified as his successor. By stipulation of the parties the action was ordered to proceed against the defendants named in the caption as if they had been the original defendants.

On May 9, 1928, the county board of education of McCracken county, pursuant to the provisions of section 4426—2, of Kentucky Statutes, by an order duly entered, laid off the boundaries of a consolidated common school district in McCracken county, Ky., to be known as the West Paducah-Heath consolidated school district, and for the purposes of this case it is sufficiently accurate to say that the district thus laid off included all the territory formerly included in seven common school subdistricts of McCracken county. The order further provided, as authorized by the section of the statute referred to, that on May 26, 1928, an election should be held in the consolidated district to take the sense of the voters thereof as to whether or not a tax of not exceeding 25 cents on each $100 worth of taxable property subject to local school taxation should be levied annually by the fiscal court of McCracken county, on requisition of the county board of education, for the purpose of "providing suitable grounds and buildings and furnishing transportation to and from same, and other local school purposes in the above described district." The election was advertised as required by law and was regularly held, the result being in favor of the tax. Conceiving that the district was thereupon legally established, as authorized by section 4426—2 of Kentucky Statutes, the county board of education proceeded, through the proper channel, to levy the tax of 25 cents authorized by the election. The first year's tax sought to be collected was for the school fiscal year ended June 30, 1928.

The low-water mark of the Ohio river on the Illinois side of that stream was fixed as the northern boundary of the consolidated district, thus coinciding with the northern boundary of the commonwealth of Kentucky at that point. The consolidated district is a rural community and embraces approximately 27,654 acres of land, 2,060 of which are covered by the Ohio river when at ordinary low-water mark. The district has a total population of 1,800 people, and 557 of this population are of common school age. The sole improvement on or over that part of the acreage covered by the Ohio river is a railroad bridge owned by the plaintiff, and the only taxable property of any value whatever on or over that part of the acreage covered by the river, except a landing dock of negligible value belonging to the Metropolis Ferry Company, is the bridge of the plaintiff company and a small amount of rolling stock of the plaintiff used in connection with the bridge. In addition to this bridge and the rolling stock used in connection therewith, the plaintiff owns within the consolidated district a single track railroad line 4.55 miles long, the right of way therefor, and a small amount of rolling stock used in connection with the railroad. The total assessed value of taxable property in the district is $4,119,988, and of this total the plaintiff's property referred to is assessed at $3,036,310. The assessment of the Illinois Central Railroad Company is $337,724, and all the other taxable property in the dis-

trict is assessed at $745,954. The total acreage owned by the plaintiff on which its property is located is 187 acres. Its assessment of $3,036,310 is made up of the following items: The bridge, $2,800,000; rolling stock thereon, $4,260; track, right of way, and personalty, $232,050. On the basis of the assessment current at the time the bill in this case was filed, the total taxes for the district, applying the authorized rate of 25 cents, would be the sum of $10,300, of which amount the plaintiff would have to pay $7,-590.78, the Illinois Central Railroad Company $844.31, and all the other property in the district would pay only $1,864.88. The plaintiff's entire line of railroad runs from Paducah, which is outside of the consolidated district, to and through the consolidated district, across its bridge to a point in Illinois less than 2 miles from the Illinois end of its bridge. It has no depots in the consolidated district and has neither scheduled nor flag stops within its boundary. Substantially all, if not all, of its traffic is interstate in character, originating either at its terminus in Paducah or at its Illinois terminus.

This suit was brought by the plaintiff to enjoin the collection of $7,590.78 in taxes and the accrued penalty thereon claimed to be due to the consolidated district for the fiscal year ended June 30, 1928, and involves the right of the consolidated district to collect for subsequent years substantially the same amount. The bill challenges the right of the defendants to collect any tax for the school fiscal year ended June 30, 1928, on the ground that that fiscal year had practically ended at the time the district was created and the tax authorized by popular vote, and that that fiscal year had actually come to an end long before the tax was levied, and that to impose the tax on plaintiff's property for the fiscal year ended June 30, 1928, would be, in effect, imposing a tax retroactively, and that the statute evidences no intention to authorize such a procedure. With the exception of the fiscal year ended June 30, 1928, the plaintiff does not seek to avoid payment of the tax on any part of its property except that part located north of low-water mark on the Kentucky side of the Ohio river, but expresses its willingness to pay taxes on the assessed value of all that part of its property located in the consolidated district, and south of low-water mark on the Kentucky side of the Ohio river.

As a basis for its attack on the right of the defendants to tax the bridge and that part of the property located north of low-water mark on the Kentucky side of the river, the bill charges:

(1) That the tax imposed was for local improvement purposes, and that the creation of the district within which the tax operates and the fixing of the amount of the tax were not the result of legislative action by the state or by any authorized agency of the state, and therefore, inasmuch as the plaintiff was afforded no opportunity to be heard on the question of the creation of the district and the assessment of the tax, the enforcement of the tax against it would result in depriving it of its property without due process of law.

(2) That no benefit inures to the plaintiff from the creation of the district and the imposition of the tax, and therefore its enforced payment would deprive the plaintiff of its property without due process of law and deny it the equal protection of the law.

(3) That the tax as applied to the plaintiff constitutes an undue and unreasonable burden upon interstate commerce.

(4) That the inclusion in the taxing district of the Ohio river between its low-water marks on the Kentucky and Illinois shores had for its only purpose the taxation of the bridge of the plaintiff for the benefit of the consolidated district, and is so unreasonable and arbitrary as to amount to spoliation, thereby depriving the plaintiff of its property without due process of law.

These contentions will be disposed of in the order stated.

■ Under Kentucky law the fiscal year of school taxing districts, such as the consolidated district involved in this case, extends from July 1st to June 30th. The creation of the consolidated district and the right to impose the tax did not become a finality until May 26, 1928, the date on which the election was held. This was just thirty-five days before the end of the district fiscal year, June 30, 1928, and the tax was not actually levied by action of the county board of education and the fiscal court until after the close of that fiscal year. The statute providing for the creation of consolidated districts and the collection of taxes for their benefit shows no intention on the part of the Legislature to authorize retroactive taxation, and I am satisfied it should not be so construed as to authorize the levy and the collection of a tax for the benefit of a consolidated school district for a fiscal year which is substantially at an end at the time the district is created and at an end when the tax is levied. Therefore, irrespective of any other question in the case, the plaintiff is entitled to an injunc-

tion against collecting the tax sought to be collected for the fiscal year ended June 30, 1928.

The contentions of the plaintiff that it was entitled to notice of the creation of the district and the imposition of the tax, and that its failure to derive any benefit from the creation of the district and the tax imposed renders the tax invalid as to it, must be denied. It is well settled that, where special assessments and local improvement taxes are imposed through legislative action of the state itself, or by some agency of the state clothed with legislative authority in that respect, the taxpayers are not entitled, under the federal Constitution, to a hearing in advance of the creation of the improvement district or the assessment of the tax. The legislative determination of the matter is conclusive unless its action is palpably arbitrary and discriminatory. Thomas v. Kansas City Southern Ry. Co., 261 U. S. 481, 43 S. Ct. 440, 67 L. Ed. 758; Valley Farms v. Westchester, 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; Houck v. Little River Drainage District, 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266. Therefore, even if it could be conceded that the tax assailed in this case is a special assessment or local improvement tax, yet, if the district was created and the tax imposed as the result of legislative action, plaintiff would have no ground to complain because not accorded an opportunity to be heard on the creation of the district and the imposition of the tax. I have no doubt whatever that, under section 4426—2 of Kentucky Statutes, the county board of education, in laying out the district, fixing the proposed tax limit and submitting the question of the tax to the voters of the district, acted legislatively. The Constitution of Kentucky, by section 183, enjoins upon the General Assembly the duty of providing, by appropriate legislation, for an efficient system of common schools throughout the state, and all of our common school legislation has been an effort on the part of the General Assembly to perform this duty, laid upon it by the fundamental law of the state. In order to provide for an efficient system of common schools, it was necessary, of course, not only to provide funds for their support, but to devise a system for the organization and conduct of these schools. Providing funds by taxation for common schools, and providing for their organization and government, are inherently legislative in character, and by the provisions of section 183 of the Constitution are expressly committed to the legislative department. All taxes imposed for common school purposes in this state are state taxes, although the fund raised by any particular common school tax may be designed to be devoted exclusively to schools located in the territory affected by the tax. City of Louisville v. Commonwealth, 134 Ky. 488, 121 S. W. 411; Commonwealth v. Louisville National Bank, 220 Ky. 89, 294 S. W. 815; Phelps v. Board of Education, 218 Ky. 742, 292 S. W. 310. So the levying of taxes for common school purposes, and providing for the organization of common schools and for their government, are state legislative acts, performed either by the General Assembly directly, or by some subordinate legislative body expressly authorized by the Legislature to perform this legislative duty in the local territory within its jurisdiction. That the Legislature has the power to commit this legislative authority to some local body having jurisdiction over the local territory affected is not open to question. Some of the necessary essentials in the organization and government of common schools are the creation of school districts, the selection of teachers, and the government of the schools in the district, together with the imposition of taxes to support the schools or to supplement the taxes levied by general state authority. The school law of the state is full of examples of the delegation of this legislative power to local boards and municipalities. In view of these considerations, I cannot escape the conclusion that the creation of the consolidated district and the fixing of the tax involved in this case were legislative acts of the county board of education, legally authorized by the General Assembly. The fact that the tax must have the approval of the voters of the district, and that the consolidation does not become a finality until such approval is given, does not affect the governmental status of the county board of education. St. Louis & S. W. Ry. Co. v. Nattin (D. C.) 27 F.(2d) 766. I therefore conclude that, even assuming the challenged tax in this case to be a special assessment or local improvement tax, the plaintiff was not entitled under the federal Constitution to an opportunity to be heard before the district was created or before the tax was imposed.

I cannot agree, however, with the plaintiff's contention that the challenged tax must be treated as a special assessment or local improvement tax. It has none of the features of such a tax. It is a general tax levied upon the assessed value of all the property in the district, without regard to the benefits accru-

ing to the property taxed. As such a general ad valorem tax, its legality does not depend upon the receipt of any special benefit by the taxpayer or his property. St. Louis & S. W. Ry. Co. v. Nattin, 277 U. S. 157, 48 S. Ct. 438, 72 L. Ed. 830.

The claim of the plaintiff that the tax amounts to an illegal regulation of interstate commerce is equally without merit. St. Louis & S. W. Ry. Co. v. Nattin, supra.

The fact that the district was created and the tax imposed through legislative action, and the further fact that its legality cannot be measured by its resulting benefits to the property or taxpayer, are not conclusive of the validity of the creation of the district and the imposition of the tax. If the inclusion of the plaintiff's railroad bridge in the taxing district is so unnatural and so unreasonable as clearly to show that the sole purpose of the inclusion was to add to the taxable value of the property in the district, such inclusion would amount to spoliation and the taking of plaintiff's property without due process of law. The primary idea in the consolidation of school districts is to furnish a more efficient system of common schools to the people in the district. There could be no valid purpose in creating a consolidated district where there were no pupils to be served. At the time this district was created, of course, no persons lived within that part of the boundary covered by the Ohio river when at ordinary low-water mark, and unless the river changes its course there never will be any school children within that particular territory. So, in placing that particular territory within the district, there could have been no purpose to serve any of the school patrons. Let us suppose that the county board of education, instead of fixing the low-water mark on the Illinois shore of the river as the northern boundary of the district, had so defined the boundary as that no part of the river between its low-water marks on the Kentucky and Illinois shores was included in the district, except the small strip over which plaintiff's bridge is located. Had the line thus been laid out, would or could any one question that the sole purpose in taking in this small strip was to subject the bridge to taxation? In practical effect, the same result was accomplished by laying off the boundary as was done. The boundary as laid off did not bring within the consolidated district a single person who would have been excluded had the boundary been defined as suggested. It did not bring into the district any taxable property which

would have been excluded had the district been laid off as suggested. The result either way, as a practical matter, simply brings the bridge into the district for taxation purposes. Such inevitably is the sole result of including the river within the district, and legislative bodies, as well as individuals, must be presumed to have intended the necessary and inevitable result of their action.

It might be suggested that potentially there is taxable property of value, such as sand and gravel deposits, in the bed of the river and belonging to the riparian owners, and that this fact rebuts any presumption that the sole purpose in including the river was to tax plaintiff's bridge. If the inclusion of the river could be attributed in part to a purpose on the part of the board of education to tax any possible sand and gravel deposits belonging to the riparian owners, rather than to the single purpose of taxing plaintiff's bridge, the case would be no better for defendants. Under the law of Kentucky, while the state and county boundary lines along the Ohio river extend to low-water mark on its northern bank, the title of the riparian landowners extends only to the thread of that stream. That part of the Ohio river lying between the thread of the stream and low-water mark on the northern bank is unappropriated state land. Berry v. Snyder, 3 Bush (Ky.) 266, 96 Am. Dec. 219; Miller v. Hepburn, 8 Bush (Ky.) 326; Ware v. Hager, 126 Ky. 324, 103 S. W. 283; Willis v. Boyd, 224 Ky. 732, 7 S.W.(2d) 216; City of Covington v. Tax Commission, 231 Ky. 606, 21 S.W.(2d) 1010; Sections 4702 and 4703, Kentucky Statutes, Carroll's 1930 Edition. Being state land, of course the board of education cannot tax that part of the river bed north of the thread of the stream. No doubt in a proper case private structures, such as bridges, erected over the state's part of the river bed could be subjected to local taxation. In this case, however, there are no such structures except plaintiff's bridge. Therefore, if it be admitted that motives other than the taxation of plaintiff's bridge alone actuated the board in extending the northern limit of the district to the middle of the river, yet we are inevitably driven to the conclusion that the sole motive for including the river north of that point was to subject to taxation the north half of plaintiff's bridge. To that extent, at least, the action of the board can find no legal justification.

As heretofore indicated, however, I am satisfied from this record that the sole purpose of the board in including in the dis-

triet any part of the river north of low-water mark on the Kentucky side was to subject plaintiff's bridge to taxation, and that such taxation will be the only end attained by such inclusion, if allowed to stand. Such being the case, it necessarily follows that this action of the board was arbitrary and unreasonable, and violates plaintiff's federal constitutional rights.

If I am correct in this conclusion, then it seems to me that the entire action of the board in creating the district is necessarily void. With plaintiff's bridge excluded from taxation in the district, we have left a district the taxing of which has never been submitted to the people. It requires no argument to demonstrate that the question submitted to the voters of the district and approved by them is a very materially different one from that presented with the plaintiff's bridge eliminated from the taxable property of the district. As heretofore indicated, the plaintiff apparently is not seeking to have the creation of the entire district set aside as void, but expresses its willingness to leave the creation of the district unchallenged, provided its northern boundary line is decreed by the court to be the low-water mark of the Ohio river on the Kentucky side, and to pay taxes to the district on all that part of its property lying within the district as thus defined; but I do not conceive it to be within my province to thus make new boundaries for the district. It seems to me that the extent of my power is to declare the creation of the district and the levy of the tax void.

To present this question by proper pleadings, the plaintiff will be permitted, within fifteen days from this date, to file an amendment to its bill, specifically asking this relief, and upon the filing of such amendment a decree conforming to the views herein expressed may be prepared and presented for entry.