DIX-FERNDALE TAXPAYERS' ASS'N v. CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—WHEN JUDGMENT OF ASSESSORS CONCLUSIVE.

> With reference to assessments within legal districts for street improvement, in absence of fraud or bad faith or of following of plan incapable of producing reasonable equality, judgment of assessors must be held to be conclusive.

2. SAME—STREET WIDENING—BENEFITS.

> Plaintiffs' property may not be assessed for street widening improvement, although street has been widened up to their property, where it has not been widened in front of their property; there being no benefits.

3. SAME—LAW LIMITS SPECIAL ASSESSMENTS TO BENEFITS.

> All law limits special assessments to benefits, and no action may be legally taken otherwise.

---

On necessity of special benefit to sustain assessment for local improvement, see annotation in 14 L. R. A. 755.

4. SAME—SPECIAL ASSESSMENTS—WHEN PRESUMPTION OF GOOD
FAITH NOT INDULGED.

Presumption of good faith, lawful action, and considerate crea-
tion of special assessment districts may not withstand estab-
lished facts to contrary.

5. SAME—ARBITRARY ASSESSMENT DISTRICTS WITHOUT BENEFITS UN-
LAWFUL.

If assessment districts for street improvement were arbitrarily
and capriciously fixed without benefits in fact, unlawful levy
resulted, and it is immaterial that honesty of assessing officers
is not impugned.

6. SAME—ARBITRARY ASSESSMENT DISTRICTS—PROTEST—WAIVER—
EQUITY.

If common council was without power to place properties of
plaintiffs in special assessment districts because they were
not benefited by improvement, then there has been no waiver,
and their protest before board of review may be renewed in
court of equity.

7. SAME—ASSESSMENT DISTRICTS MAY NOT BE BASED ON REMOTE
FUTURE IMPROVEMENT.

Benefits to property not abutting on part of street widened,
which are dependent on extension of widening to include said
property in remote future, may not be made basis for present
assessment of benefits, because when street is widened there
will be assessment then for benefits conferred.

8. SAME—ARBITRARY ASSESSMENT NOT BASED ON BENEFITS VOID.

Where plan of street widening contemplated widening street its
whole length, but only part of street was widened, assessment
districts which included property not abutting on part of
street widened, and some of which was several miles there-
from, are without justification in fact or law, and constitute
arbitrary invasion of property rights.

POTTER, SHARPE, and NORTH, JJ., dissenting.

Appeal from Wayne; Gilbert (Parm C.), J., pre-
siding. Submitted October 21, 1931. (Docket No.
168, Calendar No. 35,626.) Decided June 6, 1932.
Rehearing denied September 14, 1932.

Bill by Dix-Ferndale Taxpayers' Association, a
corporation, and others against City of Detroit, a

municipal corporation, to vacate special assessments for street improvements. Bill dismissed. Plaintiffs appeal. Reversed.

*Charles P. O'Neil* and *Douglas A. Graham,* for plaintiffs.

*Walter Barlow (Clarence E. Wilcox,* of counsel), for defendant.

Wiest, J. In this suit plaintiffs seek vacation of special taxes assessed against their several properties for widening Vernor highway in the city of Detroit. That highway was widened to 80 feet for a long distance east of Twenty-fourth street, and from Twenty-fourth street west the former street, with change of name only, was left at its width of 46 feet. The properties of plaintiffs are upon the part of the street west of Twenty-fourth street, and also upon a street that diverges therefrom at Waterman street. No property belonging to any of plaintiffs abuts upon the widened part of the street, yet they have been assessed in the aggregate $347,112.44, for benefits. Plaintiffs claim damage to their properties, rather than any benefit, because the widened street invites through traffic to the old and narrow part of the street where it congests. In the circuit court the bill was dismissed, and plaintiffs prosecute review by appeal.

An ordinance authorizing widening the full length of the street was submitted to and adopted by the electors of the city. In pursuance of the ordinance, the city council declared the widening necessary to Twenty-fourth street, and fixed the assessment districts, inclusive of those here involved, and directed condemnation proceedings. The scheme submitted

to the electors contemplated the establishment of a wide thoroughfare, from the west city limits to the east. The part of the plan with which we are concerned stopped at Twenty-fourth street, and, if ever carried through, will go four miles west of that point to the city limits. The expense of the widening amounted to $4,556,400.39, of which the council fixed the sum of $2,278,200.19, to be paid by the city at large, and an equal amount upon the property, in varying proportions, in special assessment districts.

After assessment, notice of review was given, and persons affected were afforded an opportunity to be heard. Objection was made on the ground that the assessments within the districts west of Twenty-fourth street were unjust, but no claim of actual fraud was then, or is now advanced, and the assessment rolls were confirmed. Plaintiffs do not attack the validity of the condemnation proceedings, but do claim that the subsequent levying of the special assessment upon their properties to pay a portion of the cost was illegal, because of a total absence of benefits, which the charter of the city makes a prerequisite to the levying thereof (Detroit Charter, tit. 8, chap. 1, § 2).

The circuit judge filed an opinion fully reviewing the claims made by plaintiffs, and held that, in the absence of fraud or bad faith or of following of a plan incapable of producing reasonable equality, the judgment of the assessors must be held to be conclusive. This followed the holding in *Marks* v. *City of Detroit,* 246 Mich. 517, and aptly states the law with reference to assessments within legal districts. But in the case at bar, the complaint is that the whole scheme of including the properties of plaintiffs in special assessment districts was with-

out warrant of fact or law, and, therefore, the assessments are wholly void.

In *Marks* v. *City of Detroit, supra,* the assessment district was the portion of the city benefited by the improvement. In the case at bar the assessment district included only lots abutting on Dix and Ferndale avenues.

The first special assessment district zone extended from the opening of Twenty-fourth street through to Livernois avenue, and the amount assessed on that zone was 15 per cent. of the 1926 land valuation. The next zone was from Livernois to Waterman on Dix avenue. The assessment in that zone was approximately 10 per cent. of the 1926 land valuation. Then, where Vernor highway forks at Waterman, the north fork being the old Dix Road, and the south fork being Ferndale avenue, that was split into zones. The Dix avenue zone, or the old Dix Road, paying approximately one per cent. of the 1926 land valuation, and Ferndale avenue, from the intersection of Waterman through to Woodmere, was assessed at six per cent. of the 1926 land valuation. The depth of assessment districts, where the street was widened and where not widened, was approximately 100 feet.

Every piece of property abutting on Dix and Ferndale constituted the assessment district, but not beyond the full depth of such property. The assessments were made on the basis of foot frontage on the highway. Until the highway is widened in front of property belonging to plaintiffs the assessment cannot be so made.

If the widening of this street is extended west, and such is evidently the intention as expressed by the electorate, then plaintiffs will again be assessed for benefits, for they will then receive obvious bene-

fits. But it is without authority of law, and special taxation and not assessment for benefits, to compel them to pay now toward the widening if of no benefit to their properties.

We need but say that all law limits special assessments to benefits, and no action can be legally taken otherwise. Property is accorded that much protection by the Constitution of the State.

Defendant city stands upon the presumption of good faith, lawful action, and considerate creation of the assessment districts. Such presumption cannot withstand established facts to the contrary. Not that the honesty of any official is impugned, for such is not asserted, but it is asserted and established that unlawful districts were arbitrarily and capriciously fixed without benefits in fact, and such constitutes an unlawful levy in the eye of the law.

If the common council was without power to place the properties of the plaintiffs in special assessment districts, then there has been no waiver, and the former protest may be renewed in a court of equity.

The scheme of a wide cross-city thoroughfare has been partly carried out, but up to date stops short of the property of any plaintiff. The widening accomplished induces through traffic and creates a congested condition upon the old and narrow part of the street. Instead of being a benefit to property abutting the street where there has been no widening, it has been a decided damage, only to be relieved by future extended widening, and the benefits then accruing will be assessed.

Benefits in the remote future, dependent upon extension of the widening, cannot be made the basis for present assessment of benefits, for, if the street

is widened at some future date, there will accompany it an assessment for benefits conferred thereby.

The assessment districts west of Twenty-fourth street are without justification, in fact or law, and an arbitrary invasion of the property rights of the plaintiffs.

The decree is reversed, and a decree will be entered here in accord with this opinion. Plaintiffs will recover costs.

CLARK, C. J., and McDONALD, FEAD, and BUTZEL, JJ., concurred with WIEST, J.

SHARPE, J. (*dissenting*). The "questions involved" in this case are stated by counsel for appellants in their brief as follows:

"1. A highway was widened in such a manner as to result in no benefit up to the present time to property included in the special assessment district. The evidence showed no condition now existing from which it can be inferred that a future benefit will arise. Are such assessments legal upon the theory that benefits might possibly accrue in the future?

"2. If the assessing officers, in good faith, regard as probable, benefits to the extent and in the proportion that they lay a special assessment, is their action valid, where it is apparent that they are mistaken and that no benefits have resulted or are likely to result from the present condition of the highway?"

Whether property, not abutting on a street to be widened, will be benefited thereby presents a question, in answering which honest men might well be in disagreement. An assessment, to be valid, "must be based upon actual or probable benefits." *Hatch v. Railroad Co.*, 238 Mich. 381, 385. It must be de-

termined at the time the assessment district is established and the assessment roll confirmed by the common council.

"The statute leaves it to the council, and not to the courts, to establish and fix special assessment districts for such improvements, * * * and, in the absence of fraud or bad faith, their judgment is conclusive." *Roberts* v. *City of Sandusky,* 158 Mich. 521, 524.

"It is the general rule that when a common council has in good faith, with reference to ascertainable facts, defined such a special assessment district, its conclusion in the premises is final." *Lawrence* v. *City of Grand Rapids,* 166 Mich. 134, 136.

The purpose evidenced by the adoption of the ordinance was to establish a wide highway across the city, and the fact that territory a considerable distance from the point at which the widening stopped may be included in the assessment district seems well established. In *Marks* v. *City of Detroit,* 246 Mich. 517, the street (Madison avenue) was widened for a distance of but three blocks and, "in determining the territory benefited by the improvement, the council took in a very large area, two miles in length," and yet the assessment was sustained. The following from *Brown* v. *City of Grand Rapids,* 83 Mich. 101, was quoted with approval:

"It is not for this court to set its judgment up in opposition to that of the board of commissioners and the council, and to say that this parcel of land or that is assessed too much or too little. The assessments were to be made according to benefits to each parcel of property, and there is nothing in the record showing that the commissioners did not assess the complainant's lands in accordance with their best judgments."

Plaintiffs' right to the relief prayed for must rest upon the fact that at the time the assessment was confirmed by the council it had no facts before it from which it might determine that the property west of Twenty-fourth street would be benefited by the widening of the avenue to that street. In support of their claim in this respect they produced several witnesses engaged in the real estate business and other property owners, who testified that their property had not been benefited by the widening; that there had been no enhancement in its value, and no likelihood thereof. Several of these men, however, were frank to admit that there had been a general depression in the real estate business in the city.

John J. Scott, a member of the board of assessors, testified at length as to the method pursued and the care exercised to make the assessment of all of the property in the district fair and equitable. As to the property west of Twenty-fourth street he said:

"We went up and down that street, possibly 25 to 50 times, four of us, to see the advantage or disadvantage to the property. And we would put a tentative assessment on it and adjust it then after going over it again. * * * We didn't take the buildings in there. We just took the land assessment. We did that for each particular piece of property along the street. * * * The members of the board of assessors were a unit on them. We were always together. * * * I think they were all assessed. All of the property along the highway. The city owns property all the way through there. It was all assessed."

It also appears that a number of hearings was had by the council before confirmation, at which many of the plaintiffs were present and their protest stated by persons representing them. Sub-

stantial reductions in a number of the assessments were then made. It will be assumed that the members of the council, as well as the board of assessors, exercised their best judgment in determining that the property west of Twenty-fourth street would be benefited by the widening to that point. The improvement was one affecting the entire city, and one-half the cost thereof was spread upon the city at large. While the amount levied upon the plaintiffs' property was more than $300,000, the percentage of value varied much, and was not large when compared with other property on which assessments were levied. That plaintiffs' property was not in fact actually benefited is not the question at issue. The board of assessors and the common council determined that it would be, and no claim is made that they acted arbitrarily, or in bad faith, or were influenced by any consideration other than to arrive at a just and fair conclusion.

The resolution confirming the assessment roll was adopted on April 3, 1928. The hearing in court was had one year later. That there was at that time a marked reduction in real estate values in that part of the city was admitted by several of plaintiffs' witnesses. The probability, as stated by Mr. Justice WIEST, that "if the street is widened at some future date, there will accompany it an assessment for benefits conferred thereby," is not discussed by counsel, and in my opinion should not be considered.

The trial judge saw and heard the witnesses and personally inspected the property assessed. In his opinion he said:

"The sole test is this: Did the common council and board of assessors, in good faith, regard as probable, benefits to the extent and in the proportion that they laid the assessment. If so their action

is valid even though they were mistaken and even if plaintiffs are assessed too much. And, still further, even if the 'benefits' are not at the present moment capable of exact proof in the terms of trade or property.

"It is the judgment of the common council that gives this assessment potency and the action of that body is still of full force and effect even if such judgment has not at this date been fulfilled.

"This is a permanent public improvement and the action which was taken to provide funds for its completion is to be tested by all conditions and probable benefits extending over all the future life and use of such improvement."

With the conclusion thus reached I am in accord. The decree dismissing the bill should be affirmed, with costs to appellee.

POTTER and NORTH, JJ., concurred with SHARPE, J.